**PUBLICOVER v. MASSEY.**

Circuit Court of Appeals, Fourth Circuit.
January 10, 1928.

No. 2646.

Collision ⊗⟹95(4)—Schooner held solely in fault for collision with barge in tow.

A schooner, coming up Hampton Roads, light, after tacking for some time against a head wind, and while on the port tack, heading northwesterly, approached a tug with barges in tow, also coming in and lawfully proceeding on the north side of the fairway. The schooner attempted to come about, but, the wind having fallen, she lacked sufficient speed and was drifted by the tide into collision with one of the barges. *Held* that the schooner was solely in fault.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Suit in admiralty for collision by William H. Massey, master of the barge Clare McNally, against the schooner Maurice R. Thurlow; C. H. Publicover, master and claimant. Decree for libelant, and claimant appeals. Affirmed.

H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellant.

George M. Lanning, of Norfolk, Va. (Baird, White & Lanning, of Norfolk, Va., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. This is an appeal from a decree of the United States District Court for the Eastern District of Virginia, at Norfolk, Va., holding the schooner Maurice R. Thurlow solely at fault for a collision between that vessel and the barge Clare McNally, which occurred on the afternoon of May 21, 1926, between Old Point Comfort and Thimble Light. The appellant's brief thus states the facts and circumstances incident to the collision:

"The Thurlow, light, was bound in to Hampton Roads on a voyage from the South, and the barge, being the head barge in a tow of four, in charge of the tug Mary C. McNally, all except the rear barge being loaded, was also bound in on a voyage from Baltimore to Norfolk. The wind at the time was from the southwest, light, and the tide ebb.

"The schooner had been beating in against the head wind for some time, had passed Thimble Light, and had changed tacks three times thereafter before heading to the northwest on the course on which she was at the time of collision. The tow, coming down the bay, had rounded the Thimble Light astern of the schooner, and was making in along the northern side of the fairway at a speed of 2 or 2½ miles an hour, steering west or west-southwest.

"Having run out her starboard tack to the southward, the schooner came about on her port tack, heading to the north-northwest or

west-northwest, close-hauled, and continued on her way, intending to go to the northward of the navigable water and anchor for the night, the tide having turned and the wind decreasing. She continued on her course until she came to the northern side of the fairway, having, as she contends, the tow somewhat on her starboard quarter, when, seeing from the position, course, and speed of the tug, that it would be impossible, with the wind and tide prevailing, to continue her course across ahead of the tug, and when about 160 feet away from her, according to the mate, her helm was put down in the effort to come about, in order to avoid the tow; but, the wind having died out almost completely, when she came up into the wind she had insufficient speed to come about, with the result that she misstayed and began to drift astern on the tide towards the tow, whereupon her master, as soon as he realized that she was not going to make her tack, ordered her anchor let go, which was promptly done, but, by the time she had had opportunity to take up on it, the Clare McNally, which was the first barge in the tow, coming ahead with her previous headway, grazed along the starboard quarter of the schooner, her house coming into contact with the latter's counter and being considerably damaged; the only damage to the schooner consisting of the bending of her steering worm screw."

The court held the tug and barge free from fault, and the schooner solely to blame for navigating so far to the northward in the fairway, with the tug and tow then proceeding therein, that when the wind dropped she was unable to make a change of tack. The court likewise held that the tug and tow exercised the maritime skill reasonably required of it in navigating along the northern line of the channel, without changing or altering its course or speed, particularly in view of the fact that the fairway was obstructed by other shipping passing out of the harbor at the time.

The assignments of error are to the effect that the court erred in holding the schooner at fault for the collision, and in not placing the same upon the tug Mary C. McNally, which had the Clare McNally in tow, and that it likewise erred in not holding that the schooner had the right to run out her port tack without interference from the tug and tow, and that the latter were in fault in not keeping out of the way of the sailing vessel, which duty was particularly imposed upon them as the overtaking vessels.

These assignments of error present mainly questions of fact, and at least must be determined in the light of ascertained facts. A large part of the testimony was taken orally before the judge of the trial court, and that court has decided, as we view it, every important question of fact in the case adversely to the appellant and in favor of the appellee, which necessitated the rendering of a decree in favor of appellee barge. These findings of fact we should follow, if fairly supported by the testimony, of which we have no serious doubt. Treating the tug and tow as lawfully navigating the northern side of the fairway, and the sailing vessel as making the port tack across the fairway at the time and in the manner that it did, there is no question as to the correct determination of the case. The tug and tow were lawfully navigating where they should have been, having regard to the existing conditions of the wind and tide, the tow length, and the fact that outward bound shipping tended to obstruct the fairway. If, under these conditions, the sailing vessel saw fit to make a port tack, and was prevented from succeeding therein, being brought into collision with the appellee vessel, it cannot lawfully escape the consequence of its improvident action. To treat the tug and tow as the overtaking vessel, charged with the duty of keeping out of the way of the schooner, is the only theory that could have been advanced to justify such a maneuver on the part of the sailing vessel. It seems to us entirely clear that the facts in this case do not warrant so treating the tug and tow.

A suggestion is made that the collision was the result of unavoidable accident, or of error in extremis on the part of the schooner's navigator. We are convinced that neither of these doctrines can be invoked in behalf of the schooner, under the facts and circumstances of this case.

The decree of the District Court is free from error, and will be affirmed, with costs.

Affirmed.